# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
BRAULIO APONTE,

                        Plaintiff,

   -against-

CITY OF NEW YORK, BIENVENIDO MARTINEZ,
Individually, LUKE GASQUEZ, Individually,
And STEVEN ALFANO, Individually

                        Defendants.
-----------------------------------------------------------X

Date Filed:

Index No.

**SUMMONS**

Plaintiff designates New
York County as the place
of trial.

The basis of the venue is
where the Tort arose

**TO THE ABOVE NAMED DEFENDANTS**:

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your Answer, or if the complaint is not served with the summons, to serve a notice of appearance on Plaintiff's attorney within twenty (20) days after service of this summons, exclusive of the day of service, (or within thirty (30) days after service is complete, if this summons is not personally delivered to you within the State of New York); and in case of your failure to answer, judgment will be taken against you by default for the relief demanded hereto.

Dated:        New York, New York
                October 16, 2025

Yours, etc.

_____
John Scola
Law Office of John A. Scola, PLLC
Attorneys for the Plaintiff Braulio Aponte
90 Broad Street, 10th Floor
New York, NY 10004
(917) 423-1445

DEFENDANTS ADDRESS:
Corporation Counsel of the City
Of New York
100 Church Street
New York, NY 10007

BIENVENIDO Martinez
51-0--, 51-40 59th St,
Woodside, NY 11377

Luke Gasquez
68-40 Austin St,
Forest Hills, NY 11375

Steven Alfano
68-40 Austin St,
Forest Hills, NY 11375

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
BRAULIO APONTE,

                    Plaintiff,

    -against-

CITY OF NEW YORK, BIENVENIDO MARTINEZ,
Individually, LUKE GASQUEZ, Individually,
And STEVEN ALFANO, Individually
                    Defendants.
-----------------------------------------------------------X

Date Filed:

Index No.

**VERIFIED COMPLAINT**

**JURY DEMAND**

1. Plaintiff, BRAULIO APONTE, by his attorneys, Law Office of John A. Scola, PLLC, respectfully alleges upon information and belief as follows:

2. This is a civil action to redress the deprivation of Plaintiff BRAULIO APONTE's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1985, and under the laws and Constitution of the State of New York. The claims arise from Plaintiff's unlawful search, arrest, detention, and malicious prosecution by the New York City Police Department and its officers.

3. This is an action to further seek compensation for the serious and permanent personal injuries sustained by the plaintiffs, as a result of the negligence of the defendants, perpetrated while said defendant officers were in the process of illegally and unlawfully arresting plaintiffs.

4. At all times mentioned, Plaintiff BRAULIO APONTE, was and is a resident of Bronx County, in the City and State of New York.

5. At all times mentioned, the CITY OF NEW YORK, was and is a municipal corporation duly organized and existing by virtue of the laws of the State of New York.

6. Upon information and belief, at all times mentioned, Defendants CITY OF NEW YORK, BIENVENIDO MARTINEZ, Individually, LUKE GASQUEZ, Individually, and STEVEN ALFANO, Individually were and are police officers of the Defendant CITY OF NEW YORK , and at all times herein were acting in such capacity as the agents, servants and employees of the Defendant, THE CITY OF NEW YORK.

## PARTIES

7. Plaintiff BRAULIO APONTE is a residents of the State of New York, County of Putnam.

8. The Defendant, CITY OF NEW YORK is a municipality in the State of New York and employs the Defendant Officers.

9. The Defendant BIENVENIDO MARTINEZ, is an employee and Police Commissioner of the New York City Police Department and the Defendant CITY OF NEW YORK.

10. Defendant MARTINEZ hold the rank of Inspector in the NYPD.

11. The Defendant LUKE GASQUEZ, is an employee and Police Commissioner of the New York City Police Department and the Defendant CITY OF NEW YORK.

12. Defendant GASQUEZ hold the rank of Lieutenant in the NYPD.

13. The Defendant STEVEN ALFANO, is an employee and Police Commissioner of the New York City Police Department and the Defendant CITY OF NEW YORK.

14. Defendant ALFANO hold the rank of Lieutenant in the NYPD.

## FACTUAL ALLEGATIONS

15. Plaintiff joined the New York City Police Department ("NYPD") as a Police Officer in July 2010.

16. After successfully completing the Police Academy, Plaintiff was assigned to Police Service Area ("PSA") 7.

17. At all times herein Plaintiff excelled in his role as a police officer.

18. In January 2016, Plaintiff transferred to the Bronx Narcotics Bureau.

19. This transfer placed Plaintiff on an investigatory track to be promoted to Detective.

20. Plaintiff was promoted to Sergeant in 2022.

21. Shortly thereafter, Plaintiff was assigned to PSA 8.

22. Plaintiff excelled in his role as a Sergeant.

23. In September 2023, Plaintiff was drafted into the Internal Affairs Bureau ("IAB").

24. Specifically Plaintiff applied to join the Bronx Narcotics Borough.

25. When a member of service applies for a transfer, IAB has the right to select the officer to join IAB.

26. Plaintiff was drafted in this manner when he applied for a transfer out of PSA 8 which resulted in him being selected to join IAB Group 27 which was responsible for investigating Queens South.

27. The surprising assignment to IAB placed a great strain on Plaintiff.

28. The commute for Plaintiff was two hours each way.

29. Despite the long commute, Plaintiff excelled in his role in IAB.

30. Plaintiff had near perfect 4.5 out of 5.0 evaluations and never had a disciplinary issues.

31. On October 18, 2023, Plaintiff was up particularly early as his baby could not sleep.

32. Plaintiff decided to drive to work early.

33. Plaintiff is scheduled to work at 3:00 pm.

34. Plaintiff arrives to work before 1:00 pm and decides to try to take a nap before his tour starts.

35. Plaintiff, in an effort to help get to sleep easier takes two shots of alcohol before he enters

the NYPD facility to take a nap in the locker room.

36. Plaintiff lies down to sleep at 1:00 pm and falls asleep on the bench in the locker room.

37. Plaintiff is woken up from his nap at 3:15 pm by Defendant GASQUEZ.

38. Defendant GASQUEZ awakens Plaintiff and informs him that the Zone 1 Captain, Defendant MARTINEZ, is on his way to speak with Plaintiff.

39. Plaintiff is confused why Defendant MARTINEZ would be called.

40. Plaintiff is fit for duty, and his tour does not begin for another forty-five minutes.

41. After Defendant MARTINEZ arrives at the Command.

42. Plaintiff is taken to a conference room where he is interrogated.

43. When Plaintiff sits down in the conference room several other people come in the room.

44. Plaintiff, confused, asks if he is in trouble?

45. Plaintiff is asked to explain what happened today.

46. Plaintiff explains exactly what happens.

47. Plaintiff states that he could not sleep at home due to his baby, so he came into work early.

48. Plaintiff states that he took two shots in the parking lot after he arrived at the Command in hopes of taking a nap before his tour.

49. Plaintiff states that he was in the process of taking the nap when he was awoken by Defendant GASQUEZ.

50. Defendants MARTINEZ and GASQUEZ order Plaintiff to leave the room.

51. After Plaintiff leaves, he learns that Defendant MARTINEZ calls the Chief of IAB, Miguel Iglesias.

52. On the phone call Defendant MARTINEZ can be heard stating, "I don't have PC (Probable Cause), but I can find it.

53. This comment is witnessed by a civilian employee.

54. The statement by Defendant Martinez — 'I don't have PC, but I can find it' — reflects a pervasive NYPD culture in which officers are encouraged to manufacture probable cause to justify unlawful arrests. Defendant City of New York has, through deliberate indifference, failed to prevent, discipline, or deter this unconstitutional practice.

55. Plaintiff is the told that he needs to turn in his badge and gun because he is about to be arrested.

56. Plaintiff is arrested for driving while intoxicated (DWI)

57. There was no probable cause whatsoever to arrest Plaintiff.

58. Plaintiff was never intoxicated and never drove after drinking.

59. Plaintiff is kept in the 112th Precinct until 1:00 am on October 19, 2023.

60. Plaintiff is subsequently taken to IAB Headquarters located in Manhattan at 315 Hudson Street.

61. Plaintiff is arraigned in Queens Criminal Court the morning of October 19, 2023.

62. Plaintiff is suspended for thirty days due to the arrest.

63. Plaintiff later learns that Lieutenant Alfano had illegally searched Plaintiff's car without permission which is how they discovered the alcohol in his car.

64. There was no probably cause whatsoever to search Plaintiff's vehicle and the Defendants failed to obtain a warrant before searching his vehicle.

65. Plaintiff's vehicle was locked which meant that Lieutenant Alfano illegally broke into Plaintiff's vehicle.

66. There is no body warn cameras from the incident which would be required.

67. In November 2023, when Plaintiff returns to work, he is transferred to Bronx Court Section

in punishment for his false arrest.

68. Plaintiff is served with disciplinary charges and specifications when he returns from suspension.

69. The discipline is purely related to the false arrest.

70. The charges allege that Plaintiff was disheveled and half naked when they discovered him teary eyed and intoxicated.

71. In reality Plaintiff was awoken by Defendant GASQUEZ from his nap.

72. Additionally, Plaintiff is falsely accused of failing to secure his firearm while he took the nap in the locker room.

73. Plaintiff's weapon was locked in his locker while he slept.

74. It is unclear how Plaintiff committed this alleged infraction.

75. At no time did the Defendants find Plaintiff unfit for duty.

76. Plaintiff is taken to the Counseling Unit where he is forced to get treatment program in order to not be terminated from the NYPD over the false arrest.

77. Plaintiff is forced to go into an 18 week counseling program which meets every Tuesday at 9:00 am.

78. Plaintiff forced to retain a criminal attorney to fight the criminal case.

79. Plaintiff is forced to go to court on a monthly basis over the next seven months.

80. Plaintiff is offered to plead guilty to a violation and have his criminal case conclude.

81. Plaintiff refuses to accept the guilty plea when he did nothing wrong.

82. On May 20, 2024, Plaintiff's criminal case was dismissed in its entirety by the Defendant QUEENS DA.

83. The Queens District Attorney's Office dismissal of the criminal charges against Plaintiff

in their entirety, further underscoring the absence of probable cause for his arrest and prosecution.

84. Plaintiff was forced to endure half a year of harassment over the illegal search, false arrest and malicious prosecution.

85. Plaintiff returns to full duty on October 3, 2024.

86. Thereafter the New York State Department of Motor Vehicle also dismisses their case against Plaintiff as they determined that Plaintiff "never operated the vehicle."

87. The video footage of the incident makes clear that Plaintiff never drove the vehicle.

88. After Plaintiff's criminal charges were dismissed, Plaintiff was disciplined for the false arrest.

89. Plaintiff was told that he would be terminated for the DWI arrest if he fought the disciplinary charges.

90. Plaintiff is told that if he does not accept a punishment of 45 days lost vacation days and one year dismissal probation then he would be terminated.

91. Plaintiff has no choice but to accept the deal or risk losing his pension.

92. At no times herein, did exigent circumstances exist to justify the Defendants herein entering the premises of Plaintiff.

93. As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer injuries, including but not limited to emotional distress, nightmares, anxiety, insomnia panic attacks, mental anguish and unwarranted severe anger bouts some or all of which may be permanent.

94. As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer, mental anguish, repetitive injury, psychological and emotional distress, and physical

pain and suffering, some or all of which may be permanent.

95. As a direct and proximate result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

96. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

97. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other officers thereby causing and encouraging officers including defendants in this case, to engage in unlawful conduct.

98. Defendant City of New York, as a matter of policy and practice, conceals reports of violence and other constitutional violations of inmates by other officers thereby causing and encouraging officers including defendants in this case, to engage in unlawful conduct.

99. The actions of defendants, acting under color of State law, deprived plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in their person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

100. By these actions, defendants have deprived plaintiffs of rights secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42

U.S.C. Section 1983.

## AS A FIRST CAUSE OF ACTION:
### 42 U.S.C Section 1983-against All Defendants

101. Plaintiff hereby restates all paragraphs above of this complaint, as though fully set forth below

102. By unlawfully arresting Plaintiff without justification, probable cause or reasonable suspicion, the Officers, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. Section 1983, including, but not limited to, rights guaranteed by the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

103. In addition, the Defendants officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Fifth, Eighth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

104. The Defendant Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

105. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before stated.

## AS A SECOND CAUSE OF ACTION:

## AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY

## UNDER 42 U.S.C § 1983

106. By this reference, plaintiff incorporates each and every preceding allegation of this complaint as though fully set forth herein.

107. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

108. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

109. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

110. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

   a.  Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

   b.  manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

   c.  unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

   d.  arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

  e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

111. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

112. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

113. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

114. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

115. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

116. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

117. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York),

in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, inter alia, that "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department", and that "there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged".

118. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

119. The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

  (a) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

  (b) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

  (c) The right to be free from the use of excessive force.

120. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

121. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

122. The defendant officers' actions were vicious, wicked, cold- hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

### AS A FOR A THIRD CAUSE OF ACTION:
### 42 U.S.C Section 1983-against All Defendants

123. Plaintiff hereby restates all paragraphs above of this complaint, as though fully set forth below

124. By unlawfully arresting Plaintiff without justification, probable cause or reasonable suspicion, the Officers, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C.

Section 1983, including, but not limited to, rights guaranteed by the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

125. In addition, the Defendants officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Fifth, Eighth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

126. The Defendant Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

127. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before stated.

## JURY TRIAL

128. Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court:

    a. Compensatory damages (economic and non-economic);

    b. Punitive damages against individual defendants;

    c. Injunctive relief to restore Plaintiff's rank;

d. Attorneys' fees and costs under 42 U.S.C. § 1988;

e. Such other and further relief as the Court deems just and proper.

f. Injunctive relief to place Plaintiff at the rank of Sergeant as a result of his unlawful arrest and prosecution;

g. Award compensatory damages for the back pay, front pay, economic loss, pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff and all other damages afforded to Plaintiff by statute or otherwise in an amount to be determined at trial;

h. Award Plaintiff punitive damages in an amount to be determined at trial;

i. All defendants herein are joint and severally liable for the actions of the any and all of the named Defendants herein;

j. Grant Plaintiff such other and further relief as may be required in the interest of justice.

Dated: October 16, 2025

New York, NY

Respectfully submitted,

By: ___/s/_____
     John Scola

Law Office of John A. Scola, PLLC
Attorneys for BRAULIO APONTE
90 Broad Street Suite 1023
New York, New York 10004
(917) 423-1445
jscola@johnscolalaw.com

**VERIFICATION**

STATE OF NEW YORK      )
COUNTY OF NEW YORK   )

I, the undersigned, an attorney duly admitted to practice law in the State of New York, under penalties of perjury do affirm;

That I am the attorney of record for the Plaintiff in the within matter and make this affirmation in accordance with CPLR 3020. I have read the within Summons and Verified Complaint and know the contents thereof to be true to your affirmant's own knowledge, with the exception of those matters therein stated to be alleged upon information and belief. Your affirmant bases his belief regarding those matters upon the contents of the file and conversation with the Plaintiff.

This verification is made by your affirmant and not by the Plaintiff for the following reason; Plaintiff resides in a different County than where your affirmant maintains an office.

Dated: New York, New York
      October 16, 2025

                                    _____/s/_____
                                      John Scola